THE McCALL CO., Appellant, v. WILLIAM JONES, Respondent.

St. Louis Court of Appeals, October 1, 1900.

1. Contract, Construction of: PRACTICE, TRIAL: PRACTICE, APPELLATE. In the case at bar, as the trial court heard all the evidence *in extenso* and from it determined that there was a loss, and that the defendant had performed the conditions of the contract and consequently had the right to return the unsold portion of the stock, and offered to return it, the judgment will be affirmed as to plaintiff's claim.

2. ———: ———: ———: EXCEPTIONS: COUNTERCLAIM: JUDGMENT. And it is not a matter of exception by plaintiff because a judgment was not entered for defendant on his counterclaim.

Appeal from the Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*White & McCammon* for appellant.

(1) "A rule never to be lost sight of in determining the liability of a surety or guarantor, is, that he is a favorite of the law and has a right to stand upon the strict terms of his obligation. This is a rule universally recognized by the courts, and is applicable to every variety of circumstances. No principle is more firmly settled in this state than this; that sureties may stand on the very terms of a statutory bond or undertaking. So clearly has this doctrine been announced and acted upon that it may be regarded as entering into the

condition of such an undertaking that it will not be extended by the courts beyond the necessary import of the words used. It will not be implied that the surety has undertaken to do more or other than that which is expressed in such obligation. Again! It is now too well settled to admit of doubt that a guarantor, like a surety, is bound only by the strict letter or precise terms of the contract of his principal, whose performance he has guaranteed; that he is in this respect a favorite of the law, and that a claim against him is *strictissimi juris*, to the extent and in the manner and under the circumstances pointed out in his obligation, he is bound, and no further. He has a right to stand upon the very terms of his contract and if he does not assent to any variation of it, and a variation is made, it is fatal. Brandt on Suretyship and Guaranty, sec. 79, p. 107; Miller v. Stewart, 9 Wheat. 702. This doctrine has received the sanction of the courts of this state. Blair v. Perpetual Ins. Co., 10 Mo. 560. (2) And in a case of guaranty very similar to this case at bar. Fisher et al. v. Cutter, 20 Mo. 206, in which the quotation from Brandt is cited and approved. Also in Shines Adm'r v. Bank, 70 Mo. 524; Smith et al. v. Van Wyck, 40 Mo. App. 522.

*J. A. Moon* for respondent.

It is practically conceded by counsel for appellant, that the only contention in this case is: Was there a loss in the pattern business? If there was, then the judgment of the trial court is correct. True, he argues, that even though there was a loss, still, defendant could not claim it, because of his failure to comply with all the conditions of the contract, but the evidence shows conclusively that defendant performed his part of the contract faithfully and to the letter. Counsel contends that defendant, instead of a loss, realized a handsome profit out of the business; but the very fact that plaintiff's wit-

nesses, and the learned counsel himself, all figure differently, with different results, is persuasive evidence that something is radically wrong with their figuring. The guarantee clause of the contract is very explicit, and can leave no room for doubt as to its meaning. It says, "If you have paid us more money for patterns than you have received at the retail prices." Now then, the best evidence of the amount of patterns shipped is the invoices themselves. These were exhibited to the trial court and showed, exclusive of postage, to have been, $615.44.

BIGGS, J.—The plaintiff is a corporation and does business in the city of New York, and the defendant's place of business is in the city of Springfield, Missouri. The plaintiff manufactures and sells what is known as the McCall Bazaar Patterns. In February, 1897, it made a contract with defendant for monthly purchases of patterns, which were to be paid for within five days after each shipment. The contract was for two years. For the purpose of keeping a full stock the defendant agreed to re-order at least once a week all patterns sold, and the plaintiff agreed to take back all unsold or discarded patterns in exchange for the same number of new patterns at half price. The plaintiff also contracted that if at the end of two years the result of the business showed a loss in the sale of patterns, that is if defendant at the end of that time had paid more money for patterns than he had received at retail prices, it would within thirty days after the receipt at its place of business of the patterns remaining in stock, pay defendant the amount of such loss, provided the defendant had fully complied with the terms of his contract. The parties continued to do business under the contract until January, 1899, when on account of differences between the parties the defendant ceased to order the goods and the plaintiff established another agency in Spring-

field.  The plaintiff claims in the action that the defendant owes it on account of purchases a balance of eighty-five dollars and sixty-three cents.  The defendant in his answer denied the alleged indebtedness and set up as a counterclaim that he had lost on account of the sales of patterns the sum of fifty dollars and forty-six cents, and that at the end of the two years he had offered to return to plaintiff the patterns then unsold, which the plaintiff had declined to accept.  The cause was submitted to the court without a jury.  At the close of the evidence the plaintiff asked and the court refused to instruct that under the law and evidence the plaintiff was entitled to a judgment for the amount sued for.  Thereupon the court found against the plaintiff on its alleged cause of action and against the defendant on his alleged counterclaim, and ordered judgment entered against the plaintiff for all the costs.  The plaintiff has appealed.

There seems to be little, if any, controversy between the parties concerning the purchases made by defendant, or as to the credits to which he is entitled.  The matter of contention grows out of defendant's alleged counterclaim, and his right to return the unsold patterns of stock at the expiration of the contract.  Concerning the alleged loss counsel differ in their calculations.  According to the figures presented by counsel for plaintiff the defendant received more money for patterns than he paid.  If this be true, then the plaintiff was entitled to a judgment, and consequently there could be on recovery on the counterclaim.  On the other hand, if the defendant suffered the loss claimed, then he had the right to return to plaintiff the unsold portion of the stock, which was more than sufficient to liquidate the balance claimed by plaintiff, and consequently the defendant was entitled to a judgment on his counterclaim for the amount of the loss.  From the abstracts of the evidence it is impossible for us to determine to a mathematical certainty the dis-

puted question. There seems to be a reasonable basis for both contentions, although one must necessarily be wrong. As the trial court heard all the evidence *in extenso,* and from it determined that there was a loss and that the defendant had performed the conditions of the contract and consequently had the right to return the unsold portion of the stock and offered to return it, we must affirm the judgment as to plaintiff's claim.

As before stated it would follow logically from the finding against the plaintiff on its cause of action that judgment should be entered for defendant on his counterclaim. That the circuit court did not do this, but squared the account so to speak, is not a matter of exception by plaintiff. The defendant alone could complain of it, and as he has acquiesced in the judgment it will be affirmed in all of its parts. All concur.